UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **TWIN CITY FIRE INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**CINCINNATI INSURANCE COMPANY,**<br><br>Defendant. | Civil Action No. 1:25-cv-00980 |

## COMPLAINT

Twin City Fire Insurance Company ("Twin City") sues Cincinnati Insurance Company ("Cincinnati") for declaratory relief and states as follows:

## INTRODUCTION

This is an insurance coverage action regarding coverage for claims in an underlying lawsuit filed by the Estate of Nolan Gerwels, by Kevin and Margaret Gerwels, Personal Representatives; Kevin C. Gerwels and Margaret A. Gerwels, Individually and as the Parents and Guardians of Nadalyn Gerwels, Nia Gerwels, and Neriah Gerwels, their minor children; and Nathaniel Gerwels, individually (collectively, the "Gerwels"), against, among other parties, Goalsetter Systems, Inc., d/b/a Escalade Sports ("Goalsetter"), Indian Industries, Inc., d/b/a Escalade Sports ("Indian Industries"); Escalade, Inc., d/b/a Escalade Sports ("Escalade"); and Co-Line Welding, Inc. ("Co-Line") in the St. Joseph Superior Court in St. Joseph County, Indiana (the "Underlying Lawsuit"). The Underlying Lawsuit alleges that Nolan Christopher Gerwels ("Nolan") was killed on June 22, 2018 due to the defendants' negligence and/or misconduct.

In this action, Twin City seeks a declaratory judgment regarding Cincinnati's obligations in connection with a commercial general liability insurance policy that Cincinnati issued and under which Co-Line and Goalsetter are named insureds and Indian Industries is an additional insured. Specifically, Twin City seeks a declaration that (1) Cincinnati has the primary defense obligation for Co-Line, Goalsetter, and Indian Industries in connection with the Underlying Lawsuit; and (2) any coverage available under the relevant policy issued by Twin City is excess to coverage available under the Cincinnati policy.

## PARTIES

1. Twin City is an Indiana corporation with its principal place of business in Hartford, Connecticut.

2. Cincinnati is an Ohio corporation with its principal place of business in Ohio.

## JURISDICTION AND VENUE

3. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201. This case presents a justiciable controversy between Twin City and Cincinnati regarding which insurer has the primary obligation to defend and indemnify Co-Line, Goalsetter, and Indian Industries in connection with the underlying lawsuit.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Cincinnati because Cincinnati solicits and sells insurance contracts, conducts claims handling, and otherwise transacts business in the State of Indiana and in this district.

4902-6404-1221,

6. Pursuant to 28 U.S.C. § 1391, venue is proper in this district because Cincinnati resides in this district by virtue of being subject to personal jurisdiction as set forth above.

## FACTS

### *The Underlying Lawsuit*

7. The Underlying Lawsuit arises from the tragic death of fourteen-year-old Nolan Gerwels on June 22, 2018. Nolan was crushed by a Goalsetter® Wall Mount System (the "Basketball Goal"), manufactured by Co-Line and sold by Goalsetter, when it fell from the wall of his home, as alleged in the Third Amended Complaint ("TAC") attached here as **Exhibit 1.**

8. On July 17, 2018, the Gerwels initiated the Underlying Lawsuit by filing a complaint against multiple defendants including Goalsetter but not including Co-Line.

9. On April 20, 2020, the Gerwels filed a Second Amended Complaint that named Co-Line as a defendant.

10. On June 17, 2020, the Gerwels filed the TAC, which is the operative complaint in the Underlying Lawsuit.

11. The Gerwels allege that Kevin Gerwels, Nolan's father, purchased the basketball goal system on November 22, 2016 and had it installed in the family's home in St. Joseph County, Indiana.

12. The Gerwels allege that the Basketball Goal "was designed and manufactured by Goalsetter, Indian Industries, and Co-Line."

13. The Gerwels allege that "Goalsetter has no employees and acts only through agents and employees of Indian Industries. . . ."

14. The Gerwels allege that Goalsetter and Co-Line did not provide appropriate warnings and/or reasonably complete instructions for the Basketball Goal.

15. The Gerwels allege that Goalsetter and Co-Line deliberately withheld safety information about (a) the static loads, dynamic loads, and stresses to which the Basketball Goal (and any wall to which it would be attached) could reasonably be subjected when in use by those playing basketball, (b) the minimum requirements for the hardware necessary to support the static load or the dynamic load that the Basketball Goal would require to be safe, and/or (c) the best way to anchor the Basketball Goal to a wall for safe use.

16. The Gerwels allege that Goalsetter and Co-Line failed to design the basketball goal system with any type of back-up safety feature or redundancy, such as chains, anchors, or fasteners.

17. The Gerwels allege that the Basketball Goal was unreasonably dangerous to any user or consumer.

18. The Gerwels allege that Co-Line, with Goalsetter, designed the wall-mounted basketball goal series, including the Basketball Goal at issue.

19. The Gerwels allege that Goalsetter and Co-Line failed to exercise reasonable care in placing the Basketball Goal into the stream of commerce where it was purchased by Kevin Gerwels for use in the Gerwels' home.

20. The Gerwels allege that the basketball goal system was installed in a reckless, careless, and negligent fashion.

21. The Gerwels allege that Nolan was killed as a direct and proximate result of the negligent, grossly negligent, careless, reckless, and otherwise wrongful acts and omissions of each of the Defendants or their agents.

22. The Estate of Nolan Gerwels, through its Personal Representatives, seeks to recover economic damages, noneconomic damages, costs, and attorneys' fees in the wrongful death action.

4902-6404-1221,

The Estate of Nolan Gerwels also seeks to change existing law in Indiana to allow it to recover an award of punitive damages under Indiana's Child Wrongful Death Act.

23. Nolan's parents and siblings seek to recover damages for emotional distress and seek punitive damages.

24. Nolan's parents, Kevin and Margaret Gerwels, seek to recover damages for property damage to their home and diminution of value of their home, as well as for loss of use of part of their home.

## *Manufacturing Agreement and Policies*

  A. The Manufacturing Agreement

25. Goalsetter, Indian Industries, and Co-Line are parties to a Manufacturing Agreement dated September 30, 2015, under which Co-Line agreed "to provide services including the manufacturing and packaging of various components of certain basketball goals and accessories . . . in accordance with the designs and specifications provided by Goalsetter, which services shall consist of the fabrication of materials, manufacturing, welding, painting, surface finishing, and packaging . . . ." A copy of the Manufacturing Agreement is attached as **Exhibit 2.**

26. In the Manufacturing Agreement, Goalsetter is defined as including "Goalsetter Systems, Inc.," and "Indian Industries, Inc., d/b/a Escalade Sports."

27. The Manufacturing Agreement provides the following regarding liability insurance:

  11.4 Liability Insurance.

    (a) By Co-Line. Co-Line shall maintain the following minimum insurance coverages during the Term: . . . (iii) comprehensive general liability insurance providing operations liability, covering liability assumed under the indemnification provisions of this Section 11. The policy shall provide a combined single

      limit of liability for personal injury (including death) and property damage for not less than $2,000,000 for each occurrence. **Co-Line shall cause Goalsetter to be named as an additional insured with respect to the required comprehensive general liability coverage.**

  (b)  <u>By Goalsetter.</u> Goalsetter shall maintain products liability insurance with respect to the Components and Goals with a $2,000,000 combined single limit. This coverage may be maintained on either an occurrence or claims-made form. If products coverage is on a claims-made form, Goalsetter shall maintain such coverage for three (3) years after termination of the Term. **Goalsetter shall cause Co-Line to be named as an additional insured with respect to such coverage. Goalsetter shall also maintain a $5,000,000 umbrella in force with Co-Line as an additional insured with respect to such coverage.**

(Emphasis supplied.) *See* Exhibit 2 at 16.

  B.  <u>The Cincinnati Policy</u>

  28.  Cincinnati issued a Commercial General Liability Policy numbered EPP 031 61 64 / EBA 031 61 64 for the period March 31, 2018 to March 31, 2021 (the "Cincinnati Policy"). The Cincinnati Policy contains both Commercial General Liability primary coverage part (the "Cincinnati Primary Coverage") and an umbrella coverage part (the "Cincinnati Umbrella Coverage "). A copy of the Cincinnati Policy is attached as **Exhibit 3.**

  29.  "Co-Line Welding" and "Goalsetter Systems Inc" are named insureds on the Cincinnati Policy. *See* Exhibit 3 at 1, 4, 6.

  30.  Effective September 30, 2020, well after the accident at issue and after the filing of the Underlying Lawsuit, the Cincinnati Policy was modified via a General Change Endorsement, which added an endorsement titled "Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization" on form CG 20 10 07 04 which modifies the Named Insured Schedule by reference to new IA905 to no longer include Goalsetter as a named insured. In addition, effective the same date, pursuant to the Additional Insured - Owners, Lessees or

Contractors - Scheduled Person or Organization endorsement, "Goalsetteres" (sic) was added as an additional insured but only "in the performance of [Co-Line's] ongoing operations" at "any location at which work or operations are performed by [Co-Line] or on [Co-Line's] behalf." This amendment does not affect Goalsetter's status as a named insured under the Cincinnati Policy because the policy changes became effective well after the accident occurred and the Underlying Lawsuit filed. *See* Exhibit 3 at 115-19.

31. With respect to additional insureds required by contract or agreement, the Cincinnati Primary Coverage provides a Section II - WHO IS AN INSURED, which is modified by the endorsement titled "Automatic Additional Insured - When Required in Contract or Agreement with You" on form GA 472 10 01 which states as follows:

> 2. Each of the following is also an insured:
>
>> e. Any person or organization, hereinafter referred to as ADDITIONAL INSURED:
>>
>>> (1) Who or which is not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part; and
>>>
>>> (2) For whom you are required to add as an additional insured on this Coverage Part
>>
>> under:
>>
>>> (1) A written contract or agreement . . . but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf. A person or organization's status as an insured under this endorsement continues for only the period of time required by the written contract or agreement, but in no event beyond the expiration date of this Coverage Part.

*See* Exhibit 3 at 69.

32. In addition, the Cincinnati Policy Primary Coverage contains the endorsement titled "Commercial General Liability Broadened Endorsement" on form GA 210 02 07, which provides:

  (8)  Automatic Additional Insured – Specified Relationships

    (a)  The following is hereby added to SECTION II – WHO IS AN INSURED

      (1)  Any person or organization described in Paragraph 8.a.(2) below (hereinafter referred to below as additional insured), whom you are required to add as an additional insured under this Coverage Part by reason of:

        (a)  A written contract or agreement . . .

      is an insured, provided:

        (a)  The written or oral contract or agreement is:

          1)  Currently in effect or becomes effective during the policy period; and

          2)  Executed prior to an "occurrence" or offense to which this insurance would apply; and

        (b)  They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

      (2)  Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein: . . .

        (c)  Any person or organization (referred to below as vendor) with whom you have agreed per paragraph 8.a.(1) above to provide insurance, but only with respect to "bodily injury" . . . arising out of "your products" which are distributed or sold in the regular course of the vendor's business . . .

*See* Exhibit 3 at 63-64.

  33.  Indian Industries qualifies as an additional insured under the above-referenced provisions of the Cincinnati Primary Coverage.

4902-6404-1221,

34. To the extent this Court determines that Goalsetter is not a named insured on the Cincinnati Policy, Twin City alleges in the alternative that Goalsetter qualifies as an additional insured under the above-referenced provisions of the Cincinnati Primary Coverage.

    C.    <u>The Twin City Policy</u>

35. Twin City Fire Insurance issued a Commercial General Liability (Excess - Broad Form) Policy numbered 83 ECS OF6764 for the period July 1, 2017 to July 1, 2018 (the "Twin City Policy"). A copy of the Twin City Policy is attached as **Exhibit 4.**

36. The Twin City Policy is subject to a Self-Insured Retention and any defense or indemnity coverage afforded by the Twin City Policy is available only after the exhaustion of the Self-Insured Retention. *See* Exhibit 4 at 8.

37. "Goalsetter System, Inc." and "Indian Indusgtreis [sic] Inc. d/b/a Escalade Sports" are named insureds on the Twin City Policy. *See* Exhibit 4 at 31.

    D.    <u>The Policies' Respective "Other Insurance" Provisions</u>

38. The Cincinnati Primary Coverage provides:

5.    Other Insurance

> If other valid and collectible insurance is available to the insured for a loss we cover under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY or COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY of this Coverage Part, our obligations are limited as follows:
>
>     a.    Primary Insurance
>
> > This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
>
>     b.    Excess Insurance
>
> > This insurance is excess over:

9

    (1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (a)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work" . . .

    (2)    Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

    (3)    Any other insurance:

        (a)    Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

        (b)    That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

Cincinnati Primary Coverage, GA 101 12 04 Section III.5. *See* Exhibit 3 at 45.

39.    The "other insurance" provision quoted above in Paragraph 38 applies to Co-Line and Goalsetter as named insureds.

40.    In addition, the "other insurance" provision of the Cincinnati Primary Coverage, are modified by the endorsements GA 472 10 01 and GA 210 02 07,[1] which provide:

Section IV – Commercial General Liability Conditions is hereby amended as follows:

---

[1] The "other insurance" language in the two endorsements contain identical language but different numbering. The numbering reproduced here is from the endorsement titled "Automatic Additional Insured - When Required in Contract or Agreement With You" on form GA 472 10 01. The language in the endorsement titled "Commercial General Liability Broadened Endorsement" on form GA 210 02 07 uses letters instead of numbers. *See* Exhibit 3 at 65.

4902-6404-1221,

Condition 5. Other Insurance is amended to include:

a. Where required by a written contract or agreement, this insurance is primary and / or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and / or noncontributing, whichever applies, with this insurance.

b. Any insurance provided by this endorsement shall be primary to other insurance available to the additional insured except:

(1) As otherwise provided in SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Other Insurance, b. Excess Insurance; or

(2) For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, the coverage provided under this endorsement shall also be excess.

*See* Exhibit 3 at 70.

41. The "other insurance" language quoted above in Paragraph 40 applies to additional insured Indian Industries.

42. To the extent this Court determines that Goalsetter is not a named insured on the Cincinnati Policy, Twin City alleges in the alternative that the "other insurance" language quoted above in Paragraph 40 applies to additional insured Goalsetter.

43. The Twin City Policy, by contrast, provides:

4. Other Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

If this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for damages in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

11

4902-6404-1221,

Twin City Policy, Section IV.4. *See* Exhibit 4 at 24.

**The Dispute**

44.  On August 31, 2020, Cincinnati sent a letter to Goalsetter tendering the defense of the claim against Co-Line to Goalsetter.[2] A copy of the letter is attached as **Exhibit 5.** Cincinnati asked Goalsetter to forward this letter to its insurers for an analysis of potential coverage for Co-Line as an additional insured. Twin City received the letter from Goalsetter the same day. Cincinnati's letter did not acknowledge Goalsetter's status as a named insured on the Cincinnati Policy or otherwise inform Goalsetter of this fact.

45.  On October 23, 2020, Twin City responded to Cincinnati, explaining that Twin City had determined that it did not have an obligation to provide a defense or indemnity to Co-Line. Twin City asked Cincinnati to provide its coverage position with respect to Goalsetter under the Cincinnati Policy. A copy of the letter is attached as **Exhibit 6**. Cincinnati did not provide its coverage position to Twin City.

46.  On November 19, 2020, Cincinnati sent a tender to Indian Industries. A copy of the letter is attached as **Exhibit 7.** Again, Cincinnati's letter acknowledged neither Indian Industries' status as an additional insured on the Cincinnati Policy nor Goalsetter's status as a named insured on the same policy.

47.  Unaware of the terms of the Cincinnati Policy, Twin City began defending Goalsetter, along with Indian Industries and Escalade, against the Underlying Lawsuit.

48.  Twin City was not provided with a copy of the Cincinnati Policy until mid-2024.

---

[2] The letter was erroneously dated April 31, 2020. The letter was sent from Cincinnati to Goalsetter via email on August 31, 2020, and the month of April has only thirty days.

49. As of the filing of the instant complaint, Twin City has incurred over $1.5 million in defense costs.

50. While Goalsetter and Indian Industries qualify as insureds on both the Twin City and Cincinnati Policies, the Twin City Policy is excess to the Cincinnati Primary Coverage.

51. As the insurer with the primary defense obligation, Cincinnati is required to defend Co-Line, Goalsetter, and Indian Industries against the Underlying Lawsuit.

52. Twin City is entitled to reimbursement by Cincinnati for defense costs it incurred to defend Goalsetter and Indian Industries against the Underlying Lawsuit.

53. On October 25, 2024, Twin City sent a demand letter to Cincinnati via email, demanding that Cincinnati reimburse Twin City for the reasonable and necessary defense costs incurred thus far to defend Goalsetter and Indian Industries against the Underlying Lawsuit. A copy of the letter is attached as **Exhibit 8.**

54. On March 18, 2025, Twin City received a copy of a letter that Cincinnati had provided to defense counsel in the Underlying Lawsuit. The March 18, 2025 letter sets forth Cincinnati's coverage position for the first time and declines to undertake the defense of Goalsetter and Indian Industries against the Underlying Lawsuit. A copy of the letter is attached as **Exhibit 9**.

## COUNT I
### (DECLARATORY JUDGMENT - DUTY TO DEFEND)

55. Twin City incorporates all foregoing allegations of this pleading.

56. An actual controversy exists in this matter because Cincinnati has sought the defense of Co-Line under the Twin City Policy and has rejected Twin City's demand that Cincinnati undertake the defense of Goalsetter and Indian Industries against the Underlying Lawsuit and reimburse Twin City for defense costs incurred to date.

4902-6404-1221,

57. Twin City has incurred defense costs in amounts exceeding $1,500,000 to defend Goalsetter, Indian Industries, and Escalade against the Underlying Lawsuit.

58. Cincinnati has the primary obligation to defend Co-Line and Goalsetter as named insureds against the Underlying Lawsuit.

59. To the extent this Court determines that Goalsetter is not a named insured on the Cincinnati Policy, Twin City alleges in the alternative that Cincinnati has the primary obligation to defend Goalsetter as an additional insured against the Underlying Lawsuit.

60. Cincinnati has the primary obligation to defend Indian Industries as an additional insured against the Underlying Lawsuit.

61. Twin City is entitled to reimbursement for defense costs already incurred.

## COUNT II
## (DECLARATORY JUDGMENT - PRIORITY OF COVERAGE)

62. Twin City incorporates all foregoing allegations of this pleading.

63. An actual controversy exists in this matter because Cincinnati has sought the defense of Co-Line under the Twin City Policy and has rejected Twin City's demand that Cincinnati undertake the defense of Goalsetter and Indian Industries against the Underlying Lawsuit and reimburse Twin City for defense costs incurred to date.

64. The Twin City Policy is excess over the Cincinnati Primary Coverage.

65. The Cincinnati Primary Coverage provides Co-Line, Goalsetter, and Indian Industries with a primary and non-contributory duty to defend and potentially indemnify in connection with the Underlying Lawsuit.

66. Twin City is entitled to reimbursement for all fees and defense costs Twin City incurred to defend Goalsetter and Indian Industries against the Underlying Lawsuit.

4902-6404-1221,

67. Twin City has no defense or indemnity duty to Co-Line, Goalsetter, or Indian Industries unless and until the applicable Self-Insured Retention under the Twin City Policy and the Cincinnati Primary Coverage are exhausted.

68. The Cincinnati Primary Coverage has not been exhausted.

WHEREFORE, Twin City requests that the Court enter judgment declaring pursuant to 28 U.S.C. § 2201 that:

A. Cincinnati is required to defend Co-Line, Goalsetter, and Indian Industries against the Underlying Lawsuit under the Cincinnati Policy;

B. The Cincinnati Primary Coverage is primary, and the Twin City Policy is excess, with respect to the defense of and any indemnity for Co-Line, Goalsetter, and Indian Industries against the Underlying Lawsuit;

C. Cincinnati is required to reimburse Twin City for all fees and defense costs Twin City incurred to defend Goalsetter and Indian Industries against the Underlying Lawsuit; and

D. Twin City is entitled to other such relief as this Court deems just and proper.

Respectfully submitted,

COOTS HENKE & WHEELER, P.C.

/s/ E. Davis Coots
E. Davis Coots   #  3367-29
Jeffrey S. Zipes  # 15303-29
255 E. Carmel Dr.
Carmel, Indiana 46032
Phone: 317-708-4819
Fax: 317-573-5385
DCoots@chwlaw.com
JZipes@chwlaw.com

4902-6404-1221,

        Ezra S. Gollogly (*pro hac vice* forthcoming)
        Elizabeth M.W. Pittman (*pro hac vice* forthcoming)
        KRAMON & GRAHAM, P.A.
        750 East Pratt Street, Suite 1100
        Baltimore, Maryland 21202
        Phone: 410-752-6030
        Fax: 410-539-1269
        egollogly@kg-law.com
        epittman@kg-law.com

        *Attorneys for Twin Fire City Insurance Company.*

4902-6404-1221,